

## CONTRACTOR - SUBCONTRACTOR
## CONSTRUCTION CONTRACT

This Contract is made effective this 14th day of June, 2013, by and between the following parties:

| Contractor: | Name | D. Gerber Construction, Inc. (Gerber) |
|---|---|---|
| | Address | P.O. Box 2578, Telluride, Colorado 81435 |
| | Street Address | 123 D S. Spruce St, Telluride, Colorado 81435 |
| | Telephone | 970-728-5205 |
| | Mobile | 970-708-9577 |
| | Facsimile | 970-728-2948 |
| | Electronic Mail | dave@gerberconstruction.net |

and

| Subcontractor: | Name | Architectural Traditions |
|---|---|---|
| | Address | 9280 E. Old Vail Rd, Tucson, AZ, 85747 |
| | Street Address | |
| | Telephone | 520-574-7374 |
| | Mobile | |
| | Facsimile | |
| | Electronic Mail | |

The Project:   Master Oogway, LLC. Residence - Phase 2
137 Hood Park Rd.
Lot 413
Mountain Village, CO, 81435

1.   TYPE OF CONTRACT. The Contract is a FIXED PRICE contract. The Subcontractor shall be paid a FIXED PRICE in accordance with the Contract Documents.

2.   WORK. Subcontractor is being retained by Contractor for and on behalf of the Owner to undertake the "Work" described in this Contract. Subcontractor shall perform the Work in accordance with the terms and conditions of this Contract and the Contract Documents and in accordance and compliance with any applicable town, county, state and federal laws and regulations, which are pertinent to the activities stated herein, using

**EXHIBIT B**

knowledge and recommendations for performing the services which meet generally acceptable standards in the region for similar styled projects, and will provide a standard of care equal to, or superior to, care used by service providers similar to Subcontractor on similar projects.

The Subcontractor accepts the relationship of trust and confidence established between the Contractor and the Subcontract or by this Contract. Subcontractor shall furnish ~~all labor, equipment~~, materials and supplies necessary and appropriate to undertake and complete the Work in the manner described in the Contract Documents and this Contract.

Subcontractor certifies that he is fully familiar with all of the Contract Documents, the jobsite, the Property and Project and the conditions under which work is to be performed, that he enters into this Contract based upon his own investigation of all such matters, and that he is in no way relying upon the opinions or representations of Contractor.

The Contract Documents are incorporated in this Contract by reference. Subcontractor is bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents with respect to the Work provided for in this Contract, and where in the Contract Documents reference is made to Contractor and the provision pertains to Subcontractor's trade, craft or type of work, then such provision shall be interpreted to apply to Subcontractor instead of Contractor. In the event of any conflict between this Contract and any of the Contract Documents, this Contract shall control. This Contract represents the entire agreement between Contractor and Subcontractor relating to the Project.

Subcontractor will devote sufficient time and energy to the performance of its services and will undertake the Work using customary and commercially reasonable practices and agrees that it will devote sufficient time and energy to the performance of its services in order to discharge these accepted responsibilities for Contractor in a competent, professional, and timely manner.

Generally speaking, the Work to be performed by Subcontractor is described as follows and shall be paid as follows:

| DESCRIPTION OF WORK | COST TO COMPLETE |
| --- | --- |

Per Architectural Traditions proposal dated June 3, 2013.

**NOTE: Bifold unit BB is to be 6 panels at 45" each.**

**NOTE: Architectural Traditions agrees to add note to warranty stating that "product will not condensate at -20F with a 35% or less interior humidity elvel, or at -10F and above at 40% or less humidity."**

1. Product Specifications:
    - Architectural Traditions thermal steel windows and doors: fixed windows, inswing hopper windows, inswing casement window, inswing french doors, and outswing bifold door unit.
    - Fabricated from 304, 10 gauge stainless steel, mechanically fused to 1/4" GRP thermal break material.
    - All windows and doors units are manufactured at

**EXHIBIT B**

Architectural Traditions factory in Tucson AZ.
- 1" sight lines on fixed units 2" sight lines on operating units.
- High performance silicon 4-point contact weather-strip gasket installed on all operating units.
- All products to be 1-lite design, no muntin bar breaks
- Flat "L" profile glazing frame detail, welded at corners
- Installation clips or perimeter installation fin will be preset on all units during the manufacturing process, shipped loose for onsite attachment. These installation clip details will be worked out the architect through the submittal process and will be shown on the shop drawings.
- Metal framed fixed screens (painted to match windows) with fiberglass mesh for hopper and casement windows.
- Solid bronze thresholds at doors.
- Structural thermally broken steel mullions, engineered to 30 psf (108 mph winds) to allow for field milling. These will be detailed on shop drawings.
- Windows and doors are NFRC rated and will ship with NFRC labels installed on glass. U-values .26 fixed units, .29 operating units.

2. Window Hardware:
   - Solid bronze concealed-simplex sash lock (7 finishes available); over 36" in width will receive two. Stainless steel concealed 4-bar friction hinges.

3. Door Hardware:
   - Solid bronze butt hinge (7 finishes available); multipoint lock with solid bronze lever and matching profile keyed cylinder.

4. Glass and Glazing:
   - Glass to be factory installed by Architectural Traditions
   - Dual glazed 1 1/8" with black composite spacer
   - Glass make-up cardinal low-e366 2nd surface, cardinal low-e i89 4th surface or comparable performance glass from guardian
   - Glass tempered were noted on plans and per local building code
   - All glass to be inspected upon delivery and Architectural Traditions to be notified within 48 hours regarding damage or defects.

5. Finish:
   - Baked on epoxy primer with premium duralife powder coat top coat.
   - Color: currently AT's (Sift Espresso), this is the finish supplied on the sample the homeowner saw, but any RAL color is available.

6. Additional Services Included:

**EXHIBIT B**

- Onsite AT technician during initial installation, to sonult and verify installation methods.
- Complete shop drawings, detailing every exterior door and window opening, per attached door and window schedule.
- JB window specialties will render services as needed as AT's local Colorado sales and service representative.

7. Warranty:
   - 20 year limited warranty on product and glass from AT. Detailed warrant to be provided to Builder.
8. Exclusions (AT is not providing the following):
   - Exterior or interior trim
   - Installation of any kind
   - Installation material (i.e pans, flashing, sealants, caulking)
   - Application of touch up paint
   - Field measurements
   - Stat and/or local building code compliance
   - Protection of material stored on jobsite/storage after delivery
   - Retentions or hold backs of any type
   - Any other items not specifically identified
9. Payment Terms:
   - Sales price: $561,000
   - 15% ($84,000) to start shop drawings
   - 35% ($196,000) prior to production
   - 50% ($~~196,00~~) at delivery ($281,000) DY
10. Estimated Lead Times:
    - 2 weeks initial shop drawings
    - 1 week revisions to shop drawings (per round)
    - 16 weeks manufacturing time
    - 2 weeks transit time ( 3 shipments)
    - Note: lead times are based on current production capacities and are subject to change when product is finally released to production. Exact ship date will be provided when order is release to production.
11. Deliveries:
    - Jobsite delivery is included in this proposal
    - Job is scheduled to in 3 53' trailer over a two week period. Trucking company will drop trailers for unloading. They will allow 4 hours to unload.
12. Insurance:
    - All products will be fully insured during manufacturing and during transportation for full replacement value. AT is not a sub contractor and is insured as a material supplier. AT personnel cannot perform site work other than consultation. AT carries general liability with limits of $2 million. AT will submit insurance certificates proving coverage to builder and owner upon commencement of work when requested.
13. JB Window is Architectural Traditions' local Agent for this project.

**EXHIBIT B**

JB Window's responsibilities include: Ordering of the product, coordination of shipping to the jobsite, Inspection of product upon delivery, onsite assistance as needed by contractor, and warranty service. Architectural Traditions is paying JB Windows an agreed upon fee for this service.

14. Important Notes:
    - All work included in this proposal is custom built and cannot be returned. If work is canceled the cost of cancelation is charged based on the point of product completion. This is to be determined by AT.
    - Product to be inspected by builder at time of delivery
    - All details, finished, specifications must be finalized prior to release to production.

|  |  |
|---|---|
| TOTAL | $561,000.00 |

3. CONTRACT DOCUMENTS. The Contract Documents consist of:
   a. This Contract dated June 14th, 2013;
   b. Subcontractor's Bid dated June3rd, 2013;
   c. Correspondence between Architectural Traditions and/or JB Window and Gerber Construction, including but not limited to product information, product testing performance, product thermal performance values, condensation resistance values, etc.
   d. Contract drawings - see **Exhibit A** - Contract Drawing list dated 5/23/13 attached;
   e. All preliminary budgets;
   f. All preliminary schedules - see **Exhibit B** attached;
   g. All change orders;
   h. Subsequent modifications provided under terms of the Contract Documents and issued after execution of this Contract;

4. PLANS. Subcontractor shall perform the Work in conformance with architectural plans and specifications in the form of blueprints prepared by Jack Wesson Architects and/or Thomas W. Conyers Architect ("**Plans and Specifications**").Subcontractor acknowledges receipt of the Plans and Specifications and

5. CONTRACT SUM. Subject to the provisions in this Contract, the Contract Sum is the price for the Work, subject to modifications provided under terms of this Contract. As full compensation for performance of this Contract, Subcontractor and Gerber agree to pay Subcontractor in current funds for satisfactory performance of the Work subject to all applicable provisions of this Contract as follows: **FIXED PRICE.**

A FIXED PRICE of **$561,000.00**shall be paid to the Subcontractor by General Contractor for the Work performed and completed pursuant to this Contract, subject only to additions and deductions as provided for in this Contract.

**EXHIBIT B**

6.  PROPERTY. Subcontractor shall perform the Work upon the following property located at:

    Lot 413, Town of Mountain Village, State of Colorado

    Also known as: 137 Hood Park Road, Mountain Village, Colorado 81435

7.  CONTRACT TIME. This Contract between Gerber and Subcontractor commences on June 12, 2013. Subcontractor shall commence the Work on or before June 1, 2013 ("**Commencement Date**") and shall complete the Work on or before November 1, 2015 ("**Completion Date**"). Subcontractor is responsible for completing all tasks under the Contract before the Work will be deemed completed at the time final payment is made. As of the final certificate of completion, the Subcontractor expressly warrants Subcontractor's materials and workmanship for two years as an express warranty to Gerber. Upon the final certificate of occupancy, any and all applicable statutes of limitations begin to run. Nothing in this section shall preclude any and all other claims or damages as allowed by law. "**Completion of the Work**" shall mean that: (i) all of the Work have been completed in substantial compliance with the Contract Documents and the other requirements stated herein and has been delivered and accepted by Owner, Engineer and/or Architect and Contractor; (ii) any inspections by governmental agencies with jurisdiction over these matters has been concluded and the Work accepted or approved; (iii) Subcontractor has provided full and final waivers and releases of liens for the Work for itself and any sub-subcontractor who provided labor, material and/or services for the work on the Property; and (iv) the Property has been cleaned up and all equipment removed from the Property. Time is of the essence of this Subcontract. Subcontractor has been advised of the timing requirements associated with the commencement and completion of the Work and will use its best faith efforts to start and complete the Work within the required periods. Subcontractor shall prosecute the Work in a prompt and diligent manner whenever the Work or any part of it becomes available or at such other time or times as Contractor may direct. Subcontractor shall endeavor to promote the general progress of the entire construction and shall not, by delay or otherwise, interfere with or hinder the work of Contractor or any other subcontractor. Subcontractor shall submit to Contractor progress schedules for the Work and shall cooperate in the preparation of progress schedules when requested. If a progress schedule is furnished by Contractor to Subcontractor, Subcontractor must be ready to perform at the times indicated in the schedule. However, Contractor makes no representation that it will be ready for Subcontractor at the times indicated in the schedule, and the schedule shall be solely for Contractor's benefit. In the event that Subcontractor ships substantially late (3 weeks beyond acknowledged shipment date) Subcontractor agrees to pay to for temporary enclosure of window and door openings (if required by Contractor). Furthermore, if continued delay of windows and doors financially impacts other trades as it relates to their scope of work at the door and window openings, Subcontractor agrees to pay those "reasonable" additional cost. Should such delays occur, Subcontractor will notify Contractor in advance with revised (late) shipment date. Should the revised shipment date result in additional costs from other trades, Contractor will notify Subcontractor at that time with the additional cost estimates. ~~Subcontractor agrees to pay Contractor damages as Contractor may sustain by reason of any delay by Subcontractor.~~ Payment of such damages by Subcontractor shall not release Subcontractor from its obligation to otherwise fully perform this Subcontract. Upon written request by Contractor at any time, Subcontractor shall furnish to Contractor such evidence as Contractor may require relating to Subcontractor's ability to perform and complete this Subcontract or in a timely manner. If Subcontractor is delayed in the prosecution or completion of the Work by the act, neglect or default of Owner, Engineer or Architect, or of Contractor, or should Subcontractor be delayed waiting for materials, if required by this Subcontract to be furnished by Owner or Contractor, or by damage

**EXHIBIT B**

caused by fire or other casualty for which Subcontractor is not responsible, or in the event of a lock-out by Contractor, then the time for completion of the Work shall be extended by the number of days that Subcontractor has thus been delayed. However, no extension of time shall be made unless written notice of the delay is presented to Contractor within 48hours of the commencement of the delay. Under no circumstances shall the time for Completion of the Work be extended in an amount which will prevent Contractor from completing the Project within the time that Owner allows Contractor for such completion. No claims for additional compensation or damages for delays, whether by Contractor delays by other subcontractors, Owner, Engineer or Architect, will be allowed by Contractor. The sole remedy for delays of Subcontractor shall be an extension of time for completion of the Work. However if and only if Contractor obtains compensation from Owner on account of a delay, Subcontractor shall be entitled to such portion of the additional compensation received by Contractor from Owner for the delay as is equitable under all of the circumstances. In no event shall Subcontractor been titled to any amount in excess of that received by Contractor from Owner. Nothing here in contained shall require Contractor to make any claim against Owner for delays relating to the Work. The failure of Contractor to make or prosecute any such claim against Owner shall not entitle Subcontractor to any claim against Contractor. Any act or omission of Contractor which Subcontractor might claim as an excuse for his own failure to perform shall be deemed waived by Subcontractor unless he shall notify Contractor of his intention to assert such excuse within ten (10) days after the occurrence of any such act or omission. Subcontractor also waives any right he might have to assert against Contract or relative to the interpretation of ambiguities of contract provisions against the party who caused the uncertainty to exist.

8.  PAYMENT. Provided that Contractor has received final payment from Owner, Contractor shall pay Subcontractor total Cost of Work in such amounts as stated in Section 2 above. The Parties acknowledge and agree that Cost of the Work is calculated on the basis of a lump sum payment, fixed price amount. Subcontractor will keep and maintain accurate records in a commercially reasonable form and manner which are adequate to demonstrate actual quantities actually provided, which will be held for at least three years from the Completion of the Work. Based upon Applications for Payment submitted to Gerber by the Subcontractor, Gerber shall make payments to Subcontractor as provided below and elsewhere in the Contract Documents. All Applications for Payment must include copies of the Subcontractor's invoices and those of Subcontractor's subcontractors, sub-subcontractors, manufacturers, suppliers, or those manufacturers and suppliers of subcontractors for all labor and materials received, purchased, ordered, and requested under all oral or written contracts. If invoices are not included, payment will not be made to Subcontractor by Gerber. Contractor agrees to pay Subcontractor in monthly progress payments for 95% the value of the Work which has been completed, contingent upon such payment having been made by Owner to Contractor. The remaining 5% percent shall be retained by Contractor for not less than thirty-five days after Completion of the Work, provided that Contractor has received final payment from Owner. Any payments by Contractor under this Subcontract shall be subject to final audit and adjustment. Subcontractor shall immediately reimburse Contractor if there is any over payment. Contractor may deduct or offset from any payments to Subcontractor any amounts owed to Contractor by Subcontractor arising out of the improper performance of this Contract. The period covered by each application for payment shall be one calendar month ending on or about the last day of the month. Applications for payment must be received by Contractor not later than the first (25th) day of a month. Subcontractor shall be paid on or about the 25th of the following month subject to the Contract Documents and conditions as follows:

Payments to the Subcontractor will be processed by Gerber and submitted to Land Title Guarantee Company ("LTGC") for funding. LTGC will issue checks with lien releases attached and mail directly to Subcontractors. Subcontractor shall furnish to Contractor statutory conditional and unconditional waiver and release forms, payroll affidavits, receipts, vouchers, and releases of claims for work, labor, services, material and equipment furnished under or in connection with this Contract, all in a form satisfactory to Contractor.

**EXHIBIT B**

Where a substantial portion or a major subcontractor's invoice includes materials, LTGC may require the subcontractor to provide the material invoice along with Subcontractor's invoice. LTGC will cut a check to the subcontractor for his portion and a second two party check to the subcontractor and his supplier.

Subcontractor, and each of subcontractors suppliers and subcontractors, will be asked to furnish respective TAX Identification Numbers to LTGC unless LTGC already has this information in their records. Advise your suppliers and subcontractors to return LTGC's request for their TIN immediately. Checks will not be issued if this information is not on file with LTGC.

No payment shall be made, except at Contractor's option, unless such documentation has been furnished. Any payment made without such documentation shall not be construed as a waiver of Contractor's right to require such documentation prior to further payments. Any payment made prior to final completion and acceptance of the Work shall not be construed as acceptance of any part of the Work. The full and faithful performance of this Contract, including payment of any amounts owed by Subcontractor to any persons furnishing work, labor, services, material or equipment, is a condition precedent to Subcontractor's right to receive any progress payment or final payment. Contractor reserves the right to make payment by joint check or by direct check to Subcontractor's material suppliers, subcontractors and any person or firm who has or asserts a right of action against Contractor or Contractor's surety or who has or asserts lien or stop notice rights in connection with the Project.

If Owner or any other person responsible for providing construction funds delays in making payment to Contract or from which payment to Subcontractor is to be made, Contractor shall have a reasonable time to make payment to Subcontractor. "Reasonable time" shall be determined according to the relevant circumstances, but in no event shall be less than the time Contractor and Subcontractor require to pursue to conclusion the legal remedies against Owner and/or any other person responsible for providing construction funds to obtain payment, including but not limited to mechanic's lien remedies.

No deductions shall be made from the Subcontractor's compensation on account of penalty or liquidated damages. If the Contractor objects to any billing contained in the Monthly Statement submitted by Subcontractor, Contractor shall also advise the Subcontractor in writing, giving Contractor's reasons within ten (10) days of receipt of such statement. If objections are not made, the invoices shall be deemed to be accepted by the Contractor. Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate of 5% per annum. If the Contractor terminates the Contract as provided in the Documents, the Contractor shall reimburse the Subcontractor for any unpaid Services due the Subcontractor here under.

9. RETAINAGE. Subcontractor shall retain 5% of each invoice which shall be held as "Retainage" until Subcontractors work is 100% complete and a retainage invoice has been submitted to Contractor. Upon verification by Contractor that all of the services, supplies or materials to be provided by a Subcontractor, material men or supplier are fully complete and in full compliance with this Contract, Contractor will agree to release the respective retainage amounts for payment to the Subcontractor and Subcontractor shall execute a full and final lien release related to the Project in a form acceptable to Contractor.

10. ~~PROVISION OF EQUIPMENT, LABOR AND MATERIALS. Subcontractor shall be responsible for providing all equipment, labor and materials required to initiate and complete the Work in a timely and proper manner consistent with this Contract and the Contract Documents. Subcontractor shall hire, retain, compensate and supervise all subcontractors for labor and shall obtain and pay for required materials and equipment as necessary~~ *[initialed]*

CONTRACTOR - SUBCONTRACTOR CONSTRUCTION CONTRACT - PAGE 8

**EXHIBIT B**

~~to perform the Work and pay all amounts as the same become due and payable. Subcontractor shall obtain full and final lien waivers and releases from any sub-subcontractor with the payment of amounts due to such sub-subcontractor. Subcontractor warrants that all materials and equipment incorporated in the Work will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these requirements shall be considered defective.~~ Subcontractor agrees to furnish all supervision required for the prompt and efficient completion of the following items of work, here after the Work, in strict accordance with this Contract and the Contract Documents, including all work necessary or incidental there to

11. COORDINATION. Subcontractor shall coordinate its performance of the Work with Contractor and shall strictly adhere to any schedules developed by Contractor. Subcontractor agrees to participate in a minimum of one pre-construction meeting with Contractor and will also attend scheduled weekly meetings or other meetings with a notice of no less than 48 hours.

12. RECEIPT OF GOODS. Subcontractor agrees to have a representative available at the work site that will be responsible for inspecting and accepting all goods delivered by any vendor which will be used by Subcontractor in the performance of the Work. Subcontractor also agrees to be financially responsible for the replacement of any damaged, lost, or stolen goods due to Subcontractor's negligence. A delivery notice will be issued to Subcontractor 24 hours prior to any delivery deemed to be after hours.

13. PERMITS. PLANS. Contractor or Owner shall obtain and provide to Subcontractor all Plans and Specifications and building permit required for the Work sufficiently in advance of the Commencement Date to enable Subcontractor to commence the Work. Subcontractor states and affirms that Subcontractor has reviewed the Plans and Specifications and has determined that the Work can be completed in accordance with the Plans and Specifications within the timeframe and costs established in this Contract. Subcontractor shall obtain a specialized permit, if any are required to undertake the work, including, without limitation, permits required for work relating to electrical, plumbing or mechanical systems. Subcontractor shall be responsible for arranging any required governmental inspections for the Work in a timely manner.

14. FEES, INSPECTIONS. The Subcontractor shall bear all expenses associated with tests, inspections, and approvals required of the Subcontractor in connection with the performance of the Work.

15. LIENS. Provided Subcontractor has been paid the Cost of the Work as provided for in the Contract, Subcontractor shall defend, indemnify and hold Contractor and Owner harmless from and against: (1) any and all claims, liability, loss, damage, costs or expenses, including reasonable attorney's fees, awards and judgments, arising by reason of any claims, liens, stop notices or bond claims for work, labor, services, material or equipment used or furnished to be used on the Project, arising from or relating to Subcontractor's work on the Project, and (2) all incidental or consequential damages resulting to Contractor or Owner from such claims, liens, stop notices or bond claims. Within ten (10) days after written demand by Contractor, Subcontractor shall cause the effect of any suit, stop notice or lien to be removed from the Project. If Subcontractor fails to do so, Contractor may use whatever means it deems appropriate to cause the suit, stop notice or lien to be removed or dismissed. Any and all resulting cost and expense, including Contractor's reasonable attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor. Subcontractor may litigate any such suit, stop notice or lien provided he first causes its effect to be removed from the Project and does such other things as may be necessary to cause Owner not to with hold any monies due to Contractor by reason of such suits, stop notice or lien.

~~16. MATERIALS, TOOLS, EQUIPMENT, SUPERVISION. The Subcontractor shall furnish all of the labor, materials, tools, equipment, and services as are necessary for the proper performance of the Work.~~

**EXHIBIT B**

17. <u>WARRANTY</u>. All materials and work furnished by Subcontractor shall strictly comply with all requirements of the Contract Documents, be of good and workman like quality and free from defects, and shall be subject to inspection and approval by Contractor. Defective or nonconforming materials or work shall, at Contractor's option, immediately upon discovery be repaired or replaced at Subcontractor's sole expense, to the satisfaction of Contractor and Owner. The cost to repair any adjacent work or materials disturbed or damaged during or as a result of any such corrective work also shall be paid by Subcontractor. All corrective work and materials are guaranteed by Subcontractor in the same manner. No inspection, failure of inspection, or payment to Subcontractor shall be deemed a waiver of any of the rights or obligations, otherwise arising under this Section 18, and nothing in this section shall exclude or limit any warranties implied by law. If Subcontractor fails or refuses, within seven days after written demand by Contractor, to correct any defective or nonconforming materials or work, Contractor may, without further notice or demand cause such defective or nonconforming materials or work to be repaired or replaced by others. Subcontractor shall immediately reimburse Contractor for the cost of such repair or replacement. These warranties shall not reduce and are in addition to Subcontractor's liability under any other provisions of the Contract Documents, under applicable state law, or for latent defects.

18. <u>INDEMNIFICATION</u>. Subcontractor also agrees to indemnify and hold harmless Gerber and Owner, including their respective representatives, officers, directors, shareholders, employees, agents, affiliates, predecessors, successors, and assigns from and against all damages to which the Gerber and/or Owner may become subject or which are incurred in connection with, arise out of, result from, or are attributable to Subcontractor's failure to pay its subcontractors, sub-subcontractors, manufacturers, suppliers, or those manufacturers and suppliers of subcontractors for all labor and materials received, purchased, ordered, and requested under all oral or written contracts.

19. <u>SUBCONTRACTS AND OTHER AGREEMENTS</u>. The Subcontractor may not assign or subcontract the Work described in the Contract Documents without the written consent of Gerber.

20. <u>DEFAULT AND TERMINATION OF CONTRACT</u>.

    a. **Subcontractors Breach**. If Subcontractor at anytime: (a) refuses or neglects to supply a sufficient number of properly skilled workers or a sufficient quantity of materials of proper quality, (b) fails to timely complete the Work as required hereunder, (c) disregards laws, ordinances or rules, regulations or orders of a public authority having jurisdiction, (d) is the subject of bankruptcy or receiver ship proceedings, commits any act of insolvency, or makes an assignment for the benefit of creditors without Contractor's consent, (e) fails to make prompt payment to persons furnishing work, labor, services, material or equipment, (f) fails in any respect to properly and diligently prosecute the Work, (g) becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust, or (h) otherwise fails to timely and fully perform any of his obligations under this Subcontract, Subcontractor shall be in default. If Subcontractor fails to cure the default within forty-eight (48) hours after Contractor provides written notice of the default or if Subcontractor fails to diligently pursue to completion any cure agreed to by Contractor, then without further notice of any kind, Contractor at its option, may: (1) provide any work, labor, materials and equipment that Contractor in its sole discretion deems necessary under the circumstances and deduct the cost there of from any money then due or thereafter to become due to Subcontractor; or (2) terminate Subcontractor's right to proceed with the Work. If Contractor elects to terminate Subcontractor's right to proceed, Contractor shall have the right to enter any of Subcontractor's facilities or locations on the Project, and for the purpose of completing the Work, take possession of all materials, tools and appliances of

**EXHIBIT B**

Subcontractor, and may employ any other person or persons to finish the Work and provide needed materials. In case of such termination, Subcontractor shall not be entitled to receive any further payment under this Subcontractor until the work undertaken by Contractor in the Prime Contract is completely finished and paid for by Owner. At that time, if the unpaid balance of the Subcontract Price exceeds the expenses incurred by Contractor in finishing the Work, the excess shall be paid by Contractor to Subcontractor. If such expense exceeds the unpaid balance, then Subcontractor shall promptly pay to Contractor the amount by which such expense exceeds the unpaid balance. Expenses incurred by Contractor in finishing the Work shall include expenses incurred by Contractor for furnishing the materials, for finishing the Work, for attorneys' fees and for any damages sustained by Contractor by reason of Subcontractor's default, plus a markup of 15% for over head and administration on any such expenses. Contractor shall have a lien upon any materials, tools and appliances of Subcontractor which Contractor has taken possession of, to secure the payment of any amounts due under this provision.

b. **Contractor's Breach**. Contractor shall be in breach of this Contract, should Contractor: (a) fail to pay Subcontractor all sums due Subcontractor in a timely manner after receiving written notice and failing to cure within five days of the date of said notice; (b) fail to perform under the Contract after receiving written notice and failing to cure within five days of the date of said notice; or (c) purport to terminate the Contract without cause or terminates for cause but fails to provide notice to Subcontractor or provide the required cure period. In such event, Subcontractor may terminate the Contract. In such event of termination, Subcontractor shall be entitled to an amount equal to the value of the percentage of the compensation corresponding to the percentage of the Work that has been completed, insuring that Subcontractor has been paid for all material, labor, profit and overhead for the portion of the Work that has been completed. Any such funds shall be paid within five days of said termination. Any amount not paid within five days shall bear interest at the rate of five percent (5%) annually.

c. **Disputes with Owner**. In the event of any dispute or claim between Contractor and Owner which directly or indirectly involves the Work, or in the event of any dispute or claim between Contractor and Subcontractor concerning additional compensation or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to Owner by the terms of the Contract Documents and by all decisions, finding or determinations made there under by the person so authorized in the Contract Documents, or by any arbitrator, agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before such person, arbitrator, agency or court. If any dispute or claim is prosecuted or defended by Contractor, and Subcontractor is not directly a party or litigant, Subcontract or agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose, and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorneys' fees incurred in connection there with, to the extent of Subcontractor's interest in such claim or dispute, and Subcontractor shall be bound by any settlement of which he has notice and which is made by Contractor in good faith. It is expressly understood and agreed in connection with the determination of such claims or disputes that, as to any and all work done and agreed to be done by Subcontractor, and as to any and all materials or services furnished or agreed to be furnished by Subcontractor, and as to any and all damages, if any, incurred by Subcontractor in connection with the Project, Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

21. <u>SUSPENSIONORTERMINATIONOFPRIMECONTRACT</u>. If for any reason the "prime contract" between

**EXHIBIT B**

Owner and Contractor is suspended or terminated prior to completion of the Project, Subcontractor shall be entitled to payment only for that part of the Work which Subcontractor has actually completed and for which Contractor has received payment from Owner. However, if Contractor receives additional compensation or damages from Owner on account of such suspension or termination, Subcontractor shall be entitled to receive from Contractor that part of the additional compensation or damages which is equitable under the circumstances. This provision shall not require Contractor to make any claim against Owner for additional compensation or damages in the event of suspension or termination, and failure of Contractor to prosecute such a claim against Owner shall not entitle Subcontractor to any claim for additional compensation or damages against Contractor or Owner.

22. TERMINATIONFORCONVENIENCE. Contractor reserves the absolute right to terminate this Subcontract. In the event of termination without cause, here after "Termination for Convenience," Subcontractor shall be entitled to payment, in any amount not to exceed the Subcontract Price, calculated as follows: (1) the direct, actual cost of that part of the Work actually completed by Subcontract or in accordance with the Contract Documents; plus (2) other reasonable costs actually incurred by Subcontractor in connection with the Work (excluding legal and accounting fees, if any); plus (3) any profit for the completed Work; minus (4) the amount of any payments made to Subcontractor prior to the date of the Termination for Convenience. Subcontractor shall not be entitled to any claim or claim of lien against Contractor, Owner or the Project for any additional compensation or damages in the event of Termination for Convenience and payment in accordance with this provision. Termination for Convenience shall occur and be effective upon written notice from Contractor to Subcontractor of such termination. Upon receipt of written notice of Termination for Convenience, Subcontractor shall immediately discontinue the Work and endeavor to cancel all existing orders and contracts on terms satisfactory to Contractor, or at Contractor's option, assign such orders and contracts to Contractor. If this Subcontract is terminated by Contractor for default under Section 21 above, and if it is later determined that the default termination was wrongful, such default termination automatically shall be converted to and treated as a Termination for Convenience under this Section 23. In such event, Subcontractor shall be entitled to receive only the amounts payable under this Section 23 for a Termination for Convenience and Subcontractor specifically waives any claim for any other amounts or damages, including any claim for consequential damages.

23. DISPUTE RESOLUTION. If a dispute arises out of or relates to this Contract or its breach, the parties shall first endeavor to settle the dispute through direct discussions. If the dispute cannot be resolved through direct discussions, the parties shall participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before filing a lawsuit. To the maximum extent permitted by law, before a dispute or claim between the parties arising from this Contract or Agreement is arbitrated or brought in litigation, the parties must first pursue mediation in good faith if the parties cannot resolve between themselves, which includes _any_ dispute about whether the dispute should be mediated. All parties will each make reasonable good faith efforts in the mediation to resolve the dispute through a mutual agreement. The parties will each bear their own attorneys' fees and costs in mediation, and will equally share the mediator's fees and expenses.

24. ENFORCEMENT. In the event of an alleged default hereunder, following dispute resolution, the Party alleging the default shall send written notice to the Party allegedly in default stating the grounds for the alleged default and the specific steps that the defaulting party must take to cure the alleged default. The alleged defaulting party shall have seven (7) days to cure the default. Except with respect to any action required to establish, perfect and foreclose mechanic liens or other applicable in rem actions, this Contract shall be governed by the internal laws of the State of Colorado without reference to any choice of laws provision contained therein. In the event of mediation, arbitration or litigation arising from a dispute under this Contract,

**EXHIBIT B**

the substantially prevailing party shall recover its costs and expenses, including reasonable attorney and expert witness fees and costs. A Party may pursue all remedies provided for under Colorado law in the event of a default under this Contract, including specific performance and injunctive relief.The waiver by either Party of a breach or violation of any provision of this Contract shall not operate as or be construed to be a waiver of any subsequent breach hereof

25. INSURANCE. Before commencing the Work, as a condition of each payment, the Subcontractor shall obtain and maintain insurance in the coverages set forth below during the duration of the Work. Subcontractor shall be required to maintain the completed operations and additional insured status for three (3) years after the completion of the Subcontractor's Work. Copies of the policies shall be delivered to Gerber prior to any Work is commenced. Contractor and the owner of the Property (Master Oogway, LLC) shall be added as an additional insureds on insurance policies. Sample Certificate, **Exhibit C**, attached.

   A. Commercial General Liability in the amount of $1,000,000 per occurrence and$2,000,000 general and products and completed operation aggregate. Subcontractor will name Contractor and Owner as Additional Insureds including completed operations. Subcontractor shall be required to maintain the completed operations additional insured status for three (3) years after the completion of the Subcontractor's Work. Subcontractor's General Liability insurance shall apply on a primary basis.

   B. Auto Liability in the amount of $1,000,000 on a property damage and bodily injury combined single limit basis for all owned, hired and non-owned autos.

   C. Workers compensation in statutory amounts and the Employer's Liability Insurance withlimits of not less than $500,000.

   D. Subcontractor shall grant a waiver of subrogation in favor of the Owner and Contractorfor both the General Liability and Workers Compensation coverage.

   E. Deductible is $15,000, a deductible contribution equal to the value of a Subcontractor's deductible amount within their regular General Liability insurance program will be applied to any Subcontractor whose acts and/or actions are responsible for causing the loss. The deductible contribution will not exceed $10,000. Subcontractors who do have a deductible or a deductible or $5,000 or less within their regular General Liability insurance program will assessed a minimum deductible of $2,500.

18. ACKNOWLEDGEMENT AND AGREEMENT OF INDEPENDENT CONTRACTOR STATUS. Subcontractor acknowledges and agrees as follows:

   a.   D. Gerber Construction, Inc. will not include me as an insured under any policy it has for itself, including, without limitation, any liability, life, collision, comprehensive, health, medical, workers' compensation or unemployment compensation insurance policy.

   b.   Subcontractor has a duty to obtain, maintain, and manage workers' compensation and unemployment insurance for my employees as required by law.

   c.   Subcontractor is not entitled to any employee benefits from the D. Gerber Construction, Inc., including, but not limited to, any employer withholdings or liability for: taxes, FICA, Medicare

**EXHIBIT B**

or Medicaid; medical or disability insurance; vacation or leave; pension; unemployment insurance; or worker's compensation insurance.

d.  Subcontractor is am obligated to pay federal and state income tax on any money earned from D. Gerber Construction, Inc. Subcontractor will be provided a 1099 from LTGC or Gerber Construction Inc., if Subcontractor earns more than $600.00 for the current calendar year.

e.  Subcontractor offers services that are available to the public, and Subcontractor is not required to work exclusively for D. Gerber Construction, Inc.

f.  D. Gerber Construction, Inc., will not establish a quality standard for the work, oversee the actual work or instruct Subcontractor as to how the work is to be performed, except Subcontractor represents that services and products will be consistent with generally accepted industry standards for customary services and products.

g.  Subcontractor will not be paid a salary or hourly rate, and Subcontractor understands that it will not receive regular compensation for the work to be completed.

h.  Subcontractor will dictate the time of performance consistent with the duties, obligations and requirements of Subcontractor under the Contract Documents.

i.  Subcontractor will accept only checks made payable to my trade or business name, and not personally.

j.  Subcontractor provides its own tools and supplies.

k.  Subcontractor provides its own training.

l.  Subcontractor is a separate business from D. Gerber Construction, Inc.

m.  Subcontractor understands that it may make a profit or suffer a loss from work to be completed.

n.  The Contractor shall prohibit smoking on the Project by the Contractor, any subcontractor and Contractor's and any subcontractor's employees and shall not permit the use of any bathroom at the Project other than any designated by Owner for the use of Contractor's and any subcontractor's employees and shall not access, nor permit any subcontractor or any of Contractor's or any subcontractor's employees to access, any part of the Project other than as necessary in connection with the performance of the Work.

o.  Subcontractors is responsible for all costs due to the negligence of the Subcontractor, or anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including, but not limited to, the correction of defective or nonconforming work, disposal of materials and equipment wrongly supplied, or making good any damage to property.

p.  Subcontractor is responsible for all cost related to the correction of defective or nonconforming work, disposal of materials and equipment wrongly supplied, or making good any damage to property that are attributable to Contractor and any Subcontractor, material men or supplier.

**EXHIBIT B**

19. RESPONSIBILITY. Subcontractor is not liable for delays in the performance of this Contract due to a delay in the delivery or shipment of goods or any damages suffered by Gerber by reason for such delay or when any delay is directly or indirectly caused by or arises from fire, wind, flood, accident, civil unrest, unanticipated weather conditions, acts of God, war, governmental interference, embargos, strikes, labor difficulties, shortage of labor, shortage of fuel, shortage of power, shortage of materials, shortage of supplies, transportation delays, or any other cause beyond Subcontractor's control. Subcontractor is responsible for damages due to delays due to Subcontractor's intentional, reckless, or negligent conduct. Subcontractor shall also be responsible for claims arising out of damages to persons or property occasioned by Subcontractor or his/her/its agents, third parties, errors of contractors and employees, delays of contractors and employees, or other causes within Subcontractor's control.

20. CHANGE ORDERS. Subcontractor and Gerber agree that any changes to the above referenced work shall be made pursuant to a written Change Order signed by Gerber and Subcontractor and shall be incorporated herein by reference. Change Order must reflect the changes made and an adjustment in the Contract Sum. All Change Orders are incorporated herein by reference to this Contract.

21. SAFETY. SITE CONDITIONS. Subcontractor acknowledges that it is familiar with OSHA and agrees to perform its Work in accordance with all safety rules and regulations under the law. Subcontractor further agrees that it will not appear on the site while under the influence of alcoholic beverage or controlled substances nor will it engage in consuming alcohol or controlled substances on site. Furthermore, Subcontractor will not play or cause to be played any loud music, will park all vehicles legally, will not park vehicles in the driveway of the site, and will not bring any animals to the site. Subcontractor also shall, at his expense, conform to all safety, environmental, hazardous materials, disadvantaged business, affirmative action, non-discrimination and equal employment opportunity regulations or requirements promulgated by any federal, state or local governmental authority which are in any manner applicable to this Contractor the Work.

22. Performance of Duties. Time is of the essence of this Contract and for the performance of each of the duties and obligations provided herein. In entering into this Contract, the Parties acknowledge and agree that they will perform their duties and obligations in a commercially reasonable manner and in good faith and that this commitment is being relied upon by each other Party.

23. OWNER'S MANUAL. Subcontractor shall prepare and deliver to Contractor all material information relating to maintenance, repair and operation for the Project. This information will be assembled by Contractor and become part of the "Owner's Manual".

24. UNDERSTANDING. Each party has read and considered the Contract or Agreement carefully, believes that party understands each provision, and has conferred, or has had the opportunity to confer, with the party's own attorney before executing the Contract or Agreement.

25. EFFECTUATION. Following the effective date hereof, each party shall take such action and execute such additional documentation that may be reasonably necessary or appropriate to effectuate the objectives and provisions of this Agreement.

26. EFFECTIVE DATE. This Agreement may be executed in counterparts, all of which when taken together shall be deemed one original agreement, and will be effective on June 12, 2013.

**EXHIBIT B**

27. SURVIVAL OF REPRESENTATION AND WARRANTIES. The representations and warranties set forth in this Contract or Agreement shall survive the execution and performance of this Contract or Agreement.

28. HEADINGS. The headings in this Contract or Agreement are for convenience only, confirm no rights or obligations in either party, and do not alter any terms of this Contract or Agreement.

29. ENTIRE AGREEMENT. This Contract or Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and may not be modified or amended except in a writing signed by the parties.

30. REPRESENTATION. Each party warrants that he/it is represented by counsel with respect to this Contract or Agreement and all matters covered by it; that he/it has been fully advised by said counsel with respect to his/its rights and obligations with respect to the execution of this Contract or Agreement. The Parties hereto warrant that each party is a duly qualified and existing entity, that the person(s) executing this Contract are duly authorized to execute this Contract and each Party has taken all actions necessary to obtain such authorization and that the terms and conditions of this Contract constitute an enforceable agreement against such Party.

31. ILLEGALITY. Should any provision of this Contract or Agreement be held illegal, such illegality shall not invalidate the whole of this Contract or Agreement; instead, the Contract or Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

32. AUTHORITY. Each party represents and warrants that he/it has the full power and authority to enter into this Contract or Agreement and to perform all transactions, duties and other obligations herein set forth. Each signatory to this Agreement who signs on behalf of a party represents and warrants that he or she has the authority to sign on behalf of that party.

33. SURVIVAL. All agreements and obligations of the parties under this Contract or Agreement shall survive execution and delivery of this Contract or Agreement and are not released or effected hereby.

34. BINDING EFFECT. This Contract or Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns.

35. NOTICES. All notices, demands or writings in this Contract provided to be given or made or sent that may be given or made or sent by either party hereto to the other, shall be deemed to have been fully given or made or sent when made in writing and delivered either by Fax, Email or United States Mail (certified, return receipt requests and postage pre-paid), and addressed to the party, at the above stated mailing address, email address or fax number. The mailing address, email address or fax number to which any notice, demand or writing may be changed by sending written notice to each Party notifying the party of the change.

**EXHIBIT B**

IN WITNESS OF OUR AGREEMENTS, Gerber and Subcontractor have executed this Contract or Agreement on the day and year first written above.

SUBCONTRACTOR

By _____
Architectural Traditions

Greg LeFevre
Vice President

D. GERBER CONSTRUCTION, INC.

By _____
David H. Gerber, President

**EXHIBIT B**