**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, AZ 85004-4417
Telephone 602.440.4800
Fax 602.257.9582

W. Scott Jenkins, Jr. (Bar No. 21841)
sjenkins@rcalaw.com
Kevin R. Heaphy (Bar No. 26266)
kheaphy@rcalaw.com
Naomi E. Thurston (Bar No. 29863)
nthurston@rcalaw.com

Attorneys for Plaintiff

FILED
5-29-14
14 MAY 29 PM 2:41
K. [illegible], DEPUTY

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF PIMA

| Western Alliance Bank d/b/a Alliance Bank of Arizona, | Case No. C21042834 |
|---|---|
| Plaintiff, | |
| v. | **ORDER APPOINTING RECEIVER** |
| Architectural Traditions, LLC, an Arizona limited liability company, | |
| Defendant. | |

This matter having come before the Court on Western Alliance Bank d/b/a Alliance Bank of Arizona's ("Plaintiff"), *Verified Complaint and Application for Appointment of Receiver* (the "Receivership Application") against Architectural Traditions, LLC ("Defendant"), for certain business assets as described in more detail in the Commercial Security Agreements attached to the Receivership Application (the "Collateral") and described on Exhibit A hereto, the Court, having reviewed and considered the Receivership Application, the Stipulation for the Appointment of Receiver, and having found that Plaintiff holds a valid and perfected first priority lien on the Collateral, which secures the indebtedness held by Plaintiff, that Plaintiff and Defendant have agreed upon a receivership as a means of accomplishing the orderly liquidation of Defendant's property and payment of claims, and good cause appearing therefor,

3563896.1
05/22/14

**EXHIBIT 3**

Case 1:16-cv-00079-RM-CBS Document 15-1 Filed 03/28/16 USDC Colorado Page 2 of 10

**IT IS HEREBY ORDERED:**

1. <u>APPOINTMENT OF RECEIVER</u>: Resolute Commercial Services, LLC, acting by and through Jeremiah Foster, and other authorized employees, agents, and representatives (the "<u>Receiver</u>"), is duly qualified and competent to act as a receiver for the Collateral and all business operations conducted by Defendant in connection with the Collateral. Pursuant to Rule 66, Ariz. R. Civ. P. and A.R.S. § 12-1241, the Receiver is hereby appointed, effective immediately upon the filing of the Certificate of Appointment of Receiver.

The Receiver shall have and take possession of the Collateral, as well as all Defendant's personal, tangible and intangible property (hereinafter referred to as the "<u>Receivership Estate</u>" or the "<u>Receivership Property</u>") in connection with the Defendant's business operations. The Receiver shall have all rights and powers set forth in Rule 66, Arizona Rules of Civil Procedure, this Order, and otherwise provided by law.

The Receiver's appointment shall be effective upon the filing of an oath of the receiver with the Clerk of the Superior Court of Arizona, Pima County. Plaintiff and Defendant hereby waive the requirement that the Receiver post a bond.

2. <u>RECEIVER'S POWERS AND DUTIES</u>: The Receiver is hereby granted the power and authority to:

   a) take possession of and operate, preserve and protect the Receivership Property, and/or receive and collect debts, accounts, profits, and income of the Receivership Property during the pendency of this matter and pay the operating expenses of the Receivership Property incurred before and after the date of the entry of this Order from the gross receipts derived from all aspects of those operations (the "<u>Income</u>");

   b) make or contract for such repairs as shall be necessary to the improvements on the Receivership Property, and minor purchases reasonably necessary to the effective maintenance and use of the Receivership Property and pay for such repairs and purchases;

   c) monitor and provide instructions to all contractors required for the maintenance and upkeep of the Receivership Property;

   d) hire, retain, or terminate attorneys, certified public accountants, property managers, consultants, employees, marketing personnel, security guards, present agents or employees, and other parties as may appear appropriate to

- 2 -

4570919_2

**EXHIBIT 3**

the Receiver and to pay the reasonable value of the services rendered by such parties;

e) hire such brokers for the Receivership Property as the Receiver deems appropriate to assist with listing and marketing the Receivership Property for sale;

f) sell the Receivership Property upon order of this Court and Plaintiff's written consent approving such sale. Receiver shall file a Motion to Approve Sale and Plaintiff and/or Defendant shall have ten (10) judicial days to file an objection with this Court. To the extent no timely objection is filed, the Motion to Approve Sale shall be deemed granted and this Court may approve such sale;

g) continue, make, terminate, enforce, modify, negotiate and enter into such leases, rentals, occupancy, use and other contracts and service agreements with regard to any part of the Receivership Property; provided, however, no such leases, contracts and service agreements shall extend longer than 60 days beyond the termination of the receivership unless authorized by Plaintiff in advance;

h) confirm that the Receivership Property is adequately insured and properly secured and promptly report any evidence or findings to the contrary to the parties and to the Court and, if necessary, to disburse funds for the maintenance of fire, hazard, and liability insurance for the Receivership Property or to adequately secure the Receivership Property;

i) take such steps as are reasonably necessary to place any accounts related to the Receivership Property in the Receiver's own name. The Receiver shall have the right to order a "freeze" and prohibit any withdrawals or payments from any account which the Receiver believes is a repository for funds belonging to or arising from operation of the Receivership Property, whether such accounts be titled in the name of the Defendant named herein or not;

j) issue demands and institute, continue, or otherwise resolve all proper legal actions on behalf of and to preserve the Receivership Estate and to recover all amounts that may be due to the Receivership Estate;

k) apply for, transfer, obtain and renew, as necessary to prevent the loss of or loss of use of all licenses, permits and entitlements required for the operation of the Receivership Property or issued in connection therewith;

l) deal with all governmental authorities and take all actions necessary to comply with all laws, statutes, ordinances, rules and regulations concerning the Receivership Property and its operation so that the Receiver assures that the Receivership Property and its operation are at all times in compliance with all laws, statutes, ordinances, rules and regulations and that no liabilities or obligations arise or become owed to any governmental authority as a result of actions taken by the Receiver;

4570919_2

- 3 -

**EXHIBIT 3**

m) issue demands in the name of the Receivership Estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by the Defendant and/or its agents, successors, assigns, and managing members for the receipt of rent, income, and other mail related to the Receivership Property;

n) expend funds to purchase merchandise, materials, supplies and services as the Receiver deems necessary and advisable to assist it in performing its duties hereunder and to pay therefore the ordinary and usual rates and prices out of the funds that may come into possession of the Receiver;

o) pay and discharge out of the funds coming into the Receiver's possession or custody all the expenses of the Receivership Estate and the costs and expenses of operation and maintenance of the Receivership Property, including all taxes, governmental assessments and charges;

p) with Plaintiff's consent, release work in process that may constitute Receivership Property to or for the benefit of Defendant's customers in order to mitigate such customers' claims;

q) execute and deliver, as attorney-in-fact and agent of Defendant or in Defendant's own name, such documents and instruments as are necessary or appropriate to consummate authorized transactions; and

r) take such other actions as the Receiver may reasonably consider to be necessary or advisable in connection with the day-to-day operation of the Receivership Property, including liquidation of Receivership Property and payment of creditor claims.

3. <u>RECEIVER DISTRIBUTIONS</u>: The Receiver shall apply all Income collected by the Receiver: (a) first, to the extent funds are available, to pay the reasonable and necessary costs and expenses of the Receiver and the Receivership Estate; (b) to the extent funds are available, to the indebtedness owed to Plaintiff under the Loan Documents (as defined in the Receivership Application); and (c) with Court approval, to valid creditor claims, pro-rata subject to any lien or statutory or other priority.

The Receiver shall have no duty or obligation to pay any expenses, bills or debts incurred prior to the Receiver taking possession and control of the Receivership Property. The filing of the Receivership Application by Plaintiff does not render itself liable for the costs and expenses of the Receiver nor is Plaintiff required to advance funds to the Receiver to meet the working capital needs of the Receivership Property; nor shall anything in this Order be construed as

**EXHIBIT 3**

1  obligating the Receiver to advance its own funds to pay costs and expenses of the receivership
2  which have been approved by this Court.

3      4.    RECEIVERSHIP ADVANCES: Plaintiff shall be entitled, but not obligated, to
4  advance funds to the Receiver for the Receivership Property or the Receiver's compensation
5  (hereinafter, the "Receivership Advances") and add such Receivership Advances to the
6  indebtedness due Plaintiff and secured by Plaintiff's Loan Documents, and with the same
7  priority as Plaintiff's existing liens, security interests, and assignments encumbering the
8  Receivership Property. If it is ever determined that Plaintiff's existing liens, security interests,
9  and assignments encumbering the Receivership Property are not in first secured positions, the
10 Receivership Advances made pursuant to this Order shall nevertheless be secured by first liens,
11 security interests, and assignments encumbering the Receivership Property and enforceable
12 pursuant to the remedies provided by Arizona law and Plaintiff's Loan Documents. The
13 Receiver shall be, and hereby is, authorized and directed to issue the Receivership Certificate(s)
14 to Plaintiff, at Plaintiff's request, reflecting the amount and priority of the Receivership
15 Advances.

16     5.    RECEIVER REPORTING: Receiver shall file with this Court (and provide copies
17 thereof to each of the parties) a monthly financial report, showing activity for that month,
18 including without limitation calculation of the Receiver fee and payments to any third party
19 professionals retained by the Receiver, and a narrative report, at least quarterly.

20     6.    LENDER LIABILITY: Plaintiff and its present and former officers, directors,
21 shareholders, employees and agents, subsidiaries, and their heirs, personal representatives,
22 successors and assigns shall not be liable for: (a) any act or omission of the Receiver, or
23 (b) defects, deficiencies, flaws, expenses, costs, or other matters relating to the Receivership
24 Property. Nothing in this Order shall be deemed to limit or prohibit Plaintiff from initiating
25 and/or completing a uniform commercial code sale or other disposition of the Collateral.
26

- 5 -

4570919_2

**EXHIBIT 3**

7. RECEIVER LIABILITY:

    a) **Civil Claims.** No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an Order of this Court permitting a suit or action to proceed; provided, however, that no prior Court Order is required to file a motion in this action to enforce the provisions of this Order or any other Order of this Court in this action.

    b) **Personal Liability to Creditors.** The Receiver and its employees, agents, accountants and attorneys shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of the parties and any of Defendant's creditors, because of its duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Arizona law.

    c) **No Personal Obligation of Receiver.** No obligation incurred by Receiver in the good faith performance of its duties in accordance with the orders of this Court whether pursuant to any contract, by reason of any tort, or otherwise, shall be Receiver's obligation or the personal obligation of its principals or agents, except in a case where the Receiver has knowingly acted outside the scope of the receivership authority, or committed fraud or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted grossly negligently. Rather, the recourse of any person or entity to whom Receiver becomes obligated in connection with the performance of its duties and responsibilities shall be solely against the Collateral assets of the Receivership Estate.

    d) **Indemnity.** The Receivership Estate shall indemnify and hold harmless the Receiver from any claims made by persons not a party to this Order, which claims arise out of the operation of this receivership, except in a case where the Receiver has knowingly acted outside the scope of the receivership authority, or committed fraud or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted grossly negligently. In the event a suit is filed against the Receiver, or a related entity of the Receiver, over an issue arising out of this action, except as conditioned above, it shall be incumbent upon the receivership to reimburse the Receiver for the fees and costs of defending such action, including any appeals thereof to final resolution and award of judgments.

    e) **Hazardous Substances.** Notwithstanding anything to the contrary contained in this Order, the Receiver shall not take any action with regard to ownership, operation, control, storage, generation, or disposal of (a) any substance deemed a "hazardous substance", "pollutant", "contaminant", or similar substance under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675, the Conservation and Recovery Act of 1976, the Solid Waste Amendments of 1984, the Superfund Amendments and Reauthorization Act of 1986, and any other amendments; or (b) any other chemical, toxant, pollutant or substance defined as hazardous or dangerous to human health under any other federal, state or local law, regulation, rule or ordinance, including, without limitation thereto, petroleum, crude oil, or

**EXHIBIT 3**

any fraction thereof (all collectively referred to herein as "Hazardous Substances"), without first applying for and obtaining an Order of this Court specifically setting forth the action or actions proposed to be taken by the Receiver. Without first applying for and obtaining such an Order of this Court, the Receiver shall have no ownership, control, authority or power (neither shall Receiver have any obligation to exercise ownership, control, authority or power) over the operation, storage, generation or disposal of any Hazardous Substances. All decisions relating to the ownership, operation, control, storage, generation and disposal of any Hazardous Substances shall be resolved by this Court. Notwithstanding the foregoing provisions of this section, substances typically stored, used or consumed in the hospitality industry shall be excluded from the provisions of this section, provided such storage, use or consumption are all in accordance with applicable law.

8. **RECEIVER COMPENSATION**: The Receiver shall be paid hourly for receivership related services provided hereunder. Hours worked will be billed at a rate of $300.00 per hour for professional and $100.00 per hour for administrative and research personnel (collectively, "Receiver's Fees"). If the Collateral is sold in connection with a motion to approve sale, the Receiver shall be entitled to a commission of 1.5% of the sale price of the Receivership Property, but all prior Receiver's Fees shall be a credit against the sale commission. The Receiver shall be paid hourly (or as Plaintiff and Defendant otherwise agree) for any post sale activities, such as confirming, validating and paying other creditors to the extent any sale renders excess process after the secured creditors are paid in full. The Receiver shall also be reimbursed for all direct expenses incurred in rendering the above services (including the cost of retaining third-party contractors and vendors, such as attorneys, consultants, and security guards, and marketing/advertising expenses as approved by Plaintiff) (collectively, "Receiver's Expenses"). Subject to Plaintiff's right to object and Plaintiff's prior written approval, Plaintiff shall be responsible for the payment of Receiver's Fees and Receiver's Expenses. Any such sums advanced by Plaintiff shall be a Receiver Advance.

9. **TURNOVER AND NON-INTERFERENCE WITH RECEIVER**: Defendant, its managers, agents, and employees: (a) shall immediately and peacefully surrender and turn over to the Receiver the Receivership Property, all records, books of account, executed originals of

- 7 -

**EXHIBIT 3**

leases, contracts, insurance policies, sales tax returns, documents and papers, and, subject to the following sentences, all funds (including checks, cash, drafts, bank accounts and proceeds) previously collected as income, security and deposits as of the date of Defendant's default under the Loan Documents, relating to the Receivership Property or its operation and that are now or hereafter in their possession and control; (b) are directed to cooperate with the Receiver and to disclose all information relevant to the Receivership Property and its operation, including the names of all vendors and suppliers, provide original leases, copies of bills, service contracts, bank accounts, and to turn over to the Receiver any other material relevant and necessary in the opinion of the Receiver to the fulfillment of the tasks and objectives set forth in this Order; (c) shall prepare and provide to the Receiver an itemization as to the Receivership Property of all accounts payable and receivable and operating expenses paid during the same period; and (d) shall provide the Receiver with access to all records, files, and passwords maintained in connection with the Receivership Property and needed to access Defendant's account.

Until further order of this Court, Defendant and those acting in concert with Defendant on notice of this Order, are hereby restrained and enjoined from interfering in any way with the Receiver's access to the Receivership Property or with the Receiver's management of the Receivership Estate or the operations thereon during the pendency of this action.

Defendant shall instruct all employees, agents, or others now or hereafter in possession of any portion of the Receivership Property to contact the Receiver to make arrangements for the immediate turnover of the Receivership Property to the Receiver as the Receiver may direct.

Defendant shall immediately cooperate with the Receiver in changing signature cards, passwords, and account authorizations so that all bank accounts, credit card, merchant or other accounts of Defendant or accounts used by the Receivership Estate are turned over to and retitled in the Receiver's name.

**EXHIBIT 3**

1        In the event Defendant or some third party violates a material provision of this Order, the Receiver may petition the Court to issue an Order to Show Cause why such party should not be found to be in contempt and impose appropriate sanctions and penalties.

10.   INSURANCE. The Receiver shall be named as an additional insured party on existing liability and property damage insurance policies on the Receivership Estate.

11.   TERMINATION OF RECEIVERSHIP. Plaintiff may at any time, with or without cause, apply to this Court for an order dismissing the Receiver and/or appointing a substitute receiver approved by this Court. Upon the filing of a motion to discharge the Receiver by Plaintiff and the Receiver's filing of a final report, the Receiver shall be discharged and the Receiver bond released, unless an objection is filed within ten (10) judicial days.

       IT IS ALSO ORDERED that State and local authorities and franchisors shall expedite the immediate transfer to the Receiver of all licenses and authorities to do business associated with the Receivership Property.

       IT IS FURTHER ORDERED that Plaintiff or the Receiver or any party hereto may, at any time, on proper notice, apply to the Court for such further instructions or modifications of this Order as may be necessary to enable the Receiver to properly fulfill its duties hereunder; except for good cause shown necessitating shorter notice, five judicial (5) days' prior notice shall be considered proper notice under this Order, and such notice may be personally served or sent by certified mail.

DATED this 27th day of _____May_____, 2014.

_____
Judge of the Superior Court of Arizona,
Pima County

- 9 -

4570919_2

**EXHIBIT 3**

C2C142834

EXHIBIT "A"

All inventory and accounts, including the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

    A. All accessories, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

    B. All products and produce of any of the property described in this Collateral section.

    C. All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in the Collateral section.

    D. All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

    E. All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

All cash, certificates of deposit, and any deposits held in that certain deposit account of Defendant maintained at the Bank which is account number ******3149.

4570919_2

- 10 -

**EXHIBIT 3**